CHICAGO & NORTHWESTERN RAILWAY COMPANY, Appel-
lant, vs. RAILROAD COMMISSION OF WISCONSIN,
Respondent.

*April 14—November 8, 1922.*

*Railroads: Relocation of highways: Benefit to railroad: Assess-
ment of extra cost: Police power of state: Separation of
grades: Order of railroad commission.*

1. The state in the exercise of its police power may authorize
   the relocation of highways in order to protect the public
   from dangerous railroad crossings and cause the cost thereof
   to be assessed against the railroad company.

2. An order of the railroad commission made under sub. 5, sec.
   1797—12e, Stats., placing on the plaintiff railroad the extra
   cost of relocating a highway—which the commission found
   would divert a large part of public travel from two grade
   crossings of the plaintiff and would also benefit the railroad
   in that, after the relocation, the maintenance of flagmen
   at the crossings might be discontinued, and that the cost of
   the change was less than the benefit to the railroad,—is a
   valid exercise of the police power of the state, and does not
   involve an attempt to assess any "benefit" in the sense in
   which that term is ordinarily used in statutes relating to
   special assessments.

3. The fact that in all reasonable probability the railroad com-
   pany will not be required to separate the grades at crossings
   may be considered in determining the benefits to the rail-
   road from the relocation of a highway.

4. The state cannot bargain away its police power.
5. The assessment of the railroad company for the cost of relocating a highway to protect the public from danger at crossings to the extent of the benefits conferred on it does not preclude the legislature from thereafter requiring the railroad company to separate the grades at crossings.

APPEAL from a judgment of the circuit court for Dane county: E. RAY STEVENS, Circuit Judge. *Affirmed.*

*Samuel H. Cady* of Milwaukee, for the appellant.

*C. H. Van Alstine* of Milwaukee, as a friend of the court and by request of appellant.

For the respondent there was a brief by the *Attorney General* and *J. E. Messerschmidt,* assistant attorney general, and oral argument by *Mr. Messerschmidt.*

The following opinion was filed May 9, 1922:

ROSENBERRY, J. This is an action to review an order of the *Railroad Commission* made pursuant to the provisions of ch. 255 of the Laws of 1919.

Inasmuch as the only points raised upon this appeal relate to the reasonableness of the order and the validity of the statute under which it was made, we shall not set out in detail the proceedings, but refer only to such part thereof as is necessary to present the questions raised here.

Sheridan road is a much traveled public highway, being one of the main thoroughfares between Milwaukee and Chicago, passing through the cities of Racine, Kenosha, Waukegan, and other municipalities. About three quarters of a mile south of Lake Park, a residential section of Racine, Wisconsin, this highway crosses the plaintiff's tracks upon which it operates its passenger trains between Milwaukee and Chicago, crossing from the easterly side of such tracks to the westerly side. At a point 2,800 feet southerly from this crossing the highway again crosses plaintiff's railway tracks from the westerly side to the easterly side. The double tracks of the Milwaukee Electric Railway & Light

Company ran parallel with and on the easterly side of the plaintiff's right of way between these two crossings, the two rights of way adjoining. The Wisconsin state highway commission proposed to construct a new highway between these crossings by moving the lines of the Milwaukee Electric Railway & Light Company to the east a sufficient distance to permit of the construction of a new highway along the easterly side of the plaintiff's right of way so that the highway when constructed would be between the right of way of the plaintiff and the right of way of the Electric Company as relocated. By this construction a large part of the public travel over the two crossings would be diverted and the dangers incident to the traffic crossing the railway tracks, upon which trains were operated at a high speed, would be eliminated.

Prior to the improvement in question each of the crossings was protected day and night by flagmen. The proposed improvement of the highway is what is known as a federal act project, under which the federal government pays one third of the expense, the state one third, and the county one third. The *Railroad Commission* ordered that after the construction of the new highway the plaintiff should discontinue the maintenance of flagmen at the crossings in question and in lieu thereof install electric wigwag signals. The situation in regard to the crossings is thus stated in the order of the *Commission:*

"The two crossings involved in this proceeding are both acute-angle crossings. The view of trains from the approaches is not seriously obstructed. However, the acuteness of the angle of crossing makes it necessary to look back over one's shoulder to ascertain whether a train is approaching from behind. At the south crossing the railway is on a fill and the highway approaches ascend to the tracks from both directions. Recognizing the fact that, on account of the high-speed railway traffic and the heavy highway traffic, the crossings were more than ordinarily dangerous, the railway company voluntarily established con-

tinuous protection by flagmen at each crossing.    Under
present wage conditions the annual cost of this protection
is $5,040.    The crossings are about 2,800 feet apart, the
highway forming a loop west of the tracks between these
points."

The *Railroad Commission* found that by doing away
with the flagmen and installing electric signals upon present
conditions a saving of $4,410 per annum would be made by
the company, which if capitalized on a ten per cent. basis
would amount to $44,100, and if capitalized at six per cent.
would amount to $73,500.    The *Commission* found, tak-
ing into consideration all of the elements of benefit, that
the plaintiff's benefit as a result of the relocation would be
not less than $40,000 nor more than $90,000.

The *Commission* further found that the extra expense,
over and above the cost of improving the existing route
with the grade crossings retained, which will be incurred in
the relocation project for the purpose of avoiding the cross-
ings, is approximately $29,000, and ordered the plaintiff
to pay to the treasurer of the state of Wisconsin said sum.

The authority of the *Commission* to proceed in the
premises is conferred by sub. 5, sec. 1797—12*e*, Stats.:

"The commission, upon petition of the Wisconsin high-
way commission, the county board of any county, the com-
mon council of any city, the village board of any village or
the town board of any town to the effect that one or more
of them have undertaken or propose to undertake to relocate
an existing highway, to improve an existing highway, or
to construct a new highway in such manner as to eliminate
an existing highway grade crossing or crossings with any
railroad or so as to permanently divert a material portion
of the highway traffic from an existing highway grade
crossing or crossings with any railroad, shall issue notice of
investigation and hearing as provided in section 1797—12,
and if upon such hearing the commission shall find that the
railroad company or companies in interest will be benefited
by said highway relocation, improvement or new construc-
tion, the commission shall order said railroad company or

companies to pay to the municipality or municipalities in interest such sum of money as the commission shall find to be reasonably equivalent to the benefits received; provided, however, that if said highway relocation . . ."

The remainder of the section designates the particular officer to whom payment shall be made. No assessment of benefits was made upon the owners of other property adjacent to the highway in question. In making the assessment the *Railroad Commission* considered that the relocation of the highway would render unnecessary the separation of the grade of the highway from that of the railway, either by a tunnel or viaduct.

The order is challenged here as being unreasonable, and it is asserted the statute in question is not a valid exercise of the police power of the state; that the statute is unconstitutional for the reason that it contravenes the provisions of the constitution of the United States, particularly that clause of the Fourteenth amendment which guarantees to every person equal protection of the laws; that it contravenes sec. 3 of art. XI of the constitution of the state of Wisconsin because it attempts to authorize the levying of special assessment to pay for improvement located outside of cities and villages; that it violates sec. 1 of art. VIII of the constitution of the state of Wisconsin in that it disregards the provision that all taxation must be uniform; that it violates sec. 3 of art. XI of the constitution of the state of Wisconsin in that the property of a common carrier by a railroad used in performance of its duty to the public is personal property, and under the provisions of said sec. 3 the levying of special assessments for benefits to personal property is not authorized.

It is ably argued here that the statute in question is an exercise of the power to levy taxes and not an exercise of the police power and for that reason contravenes the constitutional provisions referred to above.

The argument is that every statute complete in itself has three parts—the subject, the object, and the means. *Mc-Neeley v. South Penn Oil Co.* 52 W. Va. 616, 44 S. E. 508, 62 L. R. A. 562; *State v. Ferguson,* 104 La. 249, 28 South. 917; *School Dist. v. McFarland,* 154 Mo. App. 411, 134 S. W. 673; 2 Lewis's Sutherland, Stat. Constr. § 347. That the act relates to and deals with the relocation of existing highways, the improvement of such highways, and the making of new highways under laws existing at the time of its enactment; hence highways, to that extent, are the subject of the act. That the object or purpose of the act is to impose upon railway companies the burden of paying the cost of such relocation, improvement, and new way to the extent of the benefits accruing therefrom to the railway companies. That the means for enforcing the act are the highway commission and the various municipal authorities and the *Railroad Commission,* and that the act is therefore complete in itself. That highways are not made or improved under the police power, but may be established by condemnation, by grant, by continuous user, or by dedication, and in no other way. That it necessarily follows that the improvement in question was not made under the police power; that an entirely new way is created without the vacation of either crossing or any part of the old way, thus bringing the matter within the rule laid down in *Milwaukee v. C., M. & St. P. R. Co.* 168 Wis. 534, 171 N. W. 54.

If the plaintiff's premises be conceded, the conclusion naturally and irresistibly follows. When this improvement is viewed as a whole, it appears with certainty that the purpose and object of the opening of the highway along the easterly line of the right of way of the plaintiff company was undertaken for the primary purpose of diverting a considerable part of the traffic from the old route and thereby protecting the public from possible injury. Were the tracks of the railway company not so located as to create

two dangerous crossings there would have been no need
for the relocation of the highway or the establishment of a
new way.   It is true that in order to achieve the primary
purpose it was necessary for the properly constituted author-
ities to establish a new way, and to that extent the power of
the state was exercised for the purpose of procuring a new
highway.   The primary purpose of the statute referred to
is to authorize the *Railroad Commission* to require a rail-
way company to contribute, not exceeding the amount of
benefits, the extra cost incurred in the relocation due to the
presence of the railway tracks.   By the terms of the statute
the assessment is limited by the amount of benefits received,
and as construed and applied by the *Railroad Commission*
it is limited to the amount of extra cost made necessary by
reason of the relocation.   There was no attempt in this
case to assess to the railroad company any part of the
cost of surfacing either the old or the new highway.   We
do not see, therefore, upon what basis it can be argued
that there is any attempt to assess any benefit in the sense in
which that term is ordinarily used in the statutes relating to
special assessments.   What is assessed in this case is the
extra cost to which the highway commission was put by
reason of the crossings in order to make the highway in
question reasonably safe for public travel, that amount being
limited, however, by the terms of the statute to the amount
of benefits received by the railway company.   If there is
no benefit there can be no assessment.

We do not discuss the power of the legislature to deal
with the matter independently of the question of benefits, as
that question is not before us, the assessment being limited
as stated.

The state has ample power, in the exercise of the police
power, to authorize the relocation of the highway in order
to protect the public and to cause the cost thereof to be
assessed against the railway company.   *Polk v. Railroad
Comm.* 154 Wis. 523, 143 N. W. 191; *Superior v. Roemer,*

154 Wis. 345, 141 N. W. 250; *Milwaukee v. Railroad Comm.* 162 Wis. 127, 155 N. W. 948; *Chicago, M. & St. P. R. Co. v. Milwaukee,* 97 Wis. 418, 72 N. W. 1118.

The purpose of the statute is not, as argued, to establish a new way, but to divert traffic so as to avoid the crossings and thus promote public safety.

The new way might have been opened up for the purpose of protecting the public whether or not the highway had been improved in the manner proposed in this case. The fact that, concurrently with the opening of the new way, the highway throughout its length was resurfaced with concrete, we regard as immaterial so far as the consideration of this question is concerned. The *Railroad Commission* found that a very material part of the traffic ordinarily passing over these crossings would be diverted in such a manner that it would not pass over either crossing. The old crossings were retained for the convenience of those who had improved their property on the westerly side of the right of way in reliance upon the fact that the highway was adjacent to their premises. The public authorities had just as much power to deal with the situation as they would have had had the two crossings been eliminated and the old highway vacated. The power of the legislature to deal with the situation in such a way as to promote the general public interest is not limited to any particular method or any particular means. It may deal with it in such a manner as will best promote the public interest, unless its power in that respect is in some way restricted by constitutional provisions.

While it is claimed that the order is upon its face unreasonable, no authorities are cited in support of that proposition, and for the reasons stated we think it a valid exercise of the police power and see no grounds upon which an allegation that the order is unreasonable can be based.

It is urged that the *Railroad Commission* in making the order took into consideration the fact that the separation of

grades at the crossings in question would not be necessary in the future. It is alleged that the state cannot bargain away the right to exercise the police power and that there is nothing in a legal sense to hinder a future legislature from requiring the grades to be separated, and that therefore it was improper to take that matter into consideration in determining the amount of the benefits. The *Commission* did take that fact into consideration, as we think it had a right to do.

It is true that the state cannot bargain away its police power and that at some future time the defendant may be required to separate the grades at these crossings. The *Railroad Commission* may, however, take into account the fact that in all reasonable probability it will not be required to do so.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied, with $25 costs, on November 8, 1922.