CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY,
Appellant, VS. RAILROAD COMMISSION OF WISCONSIN,
Respondent (Middleton relocation proceedings).

*April 7—June 22, 1925.*

*Railroads: Highway relocations: Diverting traffic from grade cross-
ings: Apportionment of expense: Power of state: Federal
Transportation Act: Benefits to railroad.*

1. The state, in the exercise of its police power to promote public
safety, may require a railroad company to pay a reasonable
part of the expense of rearranging and reconstructing state
highways so as to divert part of the traffic from grade cross-
ings. p. 366.

2. In the absence of an express determination to the contrary by
the United States supreme court, this court will assume that
the police power of the state to require railroad companies to
pay part of the expense of rearranging and reconstructing
state highways so as to divert part of the traffic from grade
crossings is unaffected by the federal Transportation Act
(41 U. S. Stats. at Large, ch. 91). p. 368.

3. Under sec. 84.05, Stats., the railroad commission may require
a railroad company to contribute part of the cost of "re-
arrangement of highways" by relocation thereof so as to
divert traffic from grade crossings, whether or not the rail-
road is benefited thereby. p. 372.

4. The benefit accruing to a railroad company by the elimination
of grade crossings or the diversion of traffic therefrom by the
relocation of state highways, under sec. 84.05, Stats., is not
measured by the amount of business done by the com-
pany, though the provisions of sub. (5), sec. 195.19 (since
amended), requiring the assessment of an amount equivalent
to the benefits, were applicable, but is determined by operat-
ing advantages. p. 372.

5. The fact that it would benefit bus lines competing with rail-
roads to require the latter to bear part of the expense of
relocating state highways does not affect the power of the
state to thus promote public safety, highways not being built
for bus-line competition but for all the people; and this argu-
ment cannot be entertained by the court, being properly ad-
dressed only to the legislature. p. 374.

APPEAL from a judgment of the circuit court for Dane
county: E. RAY STEVENS, Circuit Judge. *Affirmed.*

This is an appeal from a judgment of the circuit court for
Dane county affirming an order of the *Railroad Commission*

requiring the *Chicago, Milwaukee & St. Paul Railway Company* to pay $12,000 as a portion of the cost of relocating a highway between Middleton and Cross Plains on its Prairie du Chien division. This sum was twenty-three per cent. of the total cost. The main traveled highway between Middleton and Cross Plains, a distance of eight or nine miles, crossed the track of the appellant railroad company seven times. By appropriate action this highway was placed on state trunk highway No. 12 and thereby became a main artery for through traffic.

Prior to March 24, 1922, the state highway commission decided to improve this highway, and considered that the interests of public safety required that it be in part relocated so as to avoid these numerous crossings of the railroad track by said state trunk highway. It opened negotiations with the railroad company with a view of arriving at a mutual agreement concerning the payment on the part of the railroad company of a portion of the cost of this relocation. No agreement was reached, and on the 24th day of March, 1922, the state highway commission submitted the matter to the *Railroad Commission* pursuant to the provisions of the then sec. 1315, Stats., now sec. 84.05. The *Railroad Commission* held numerous hearings in accordance with law, and on the 10th day of July, 1923, made an order closing three of these crossings, requiring the railroad company, however, to maintain one of the crossings so closed to public travel, as a farm crossing, with gates, and to substitute another crossing for one closed, and to pay the sum of $12,000, or twenty-three per cent., as its proportion of the cost of said relocation project. It is to be borne in mind that the crossings not closed were not retained for the use of through traffic. State trunk highway No. 12 was completely relocated so that it runs on the north side of the track during the entire distance from Middleton to Cross Plains. The crossings that were retained were for the benefit of side highways, to accommodate people living south of the track and to enable them to reach state trunk highway No. 12. The relocation project diverted from the crossings all through traffic, amounting to

probably in the neighborhood of ninety per cent. of the traffic passing over highway No. 12 between Middleton and Cross Plains.

The appellant brought this action in the circuit court for Dane county for the purpose of setting aside that portion of the order of the *Railroad Commission* requiring it to pay $12,000 as a part of the cost of relocating the highway. The circuit court entered judgment affirming the order, from which judgment the appellant brings this appeal.

For the appellant there were briefs by *Henry J. Killilea* and *Rodger M. Trump,* both of Milwaukee, and oral argument by *Mr. Trump* and by *Mr. John B. Sanborn* of Madison.

For the respondent there was a brief by the *Attorney General* and *Franklin E. Bump,* assistant attorney general, and oral argument by *Mr. Bump.*

OWEN, J.   Before taking up in detail the objections urged by appellant to the validity of the order of the *Railroad Commission,* it seems appropriate to consider the power of the state in the matter of eliminating highway crossings over railroad tracks at grade.   Such crossings are universally recognized as dangerous places.   True, they are dangerous in varying degrees, some crossings being more dangerous than others, depending upon the topography of the *locus in quo* and the amount of travel passing over the crossing. Any grade crossing, however, is fraught with danger to the public and is a source of anxiety and expense to the railroad company.   Because such crossings are fraught with this danger, it is well settled that the state, in the exercise of its power to promote the public safety, commonly called the police power, may abrogate such crossings and place the burden thereof upon the railroad company.   This power has been asserted by this court in *Milwaukee v. Railroad Comm.* 162 Wis. 127, 155 N. W. 948; *Polk v. Railroad Comm.* 154 Wis. 523, 143 N. W. 191, and conceded by the supreme court of the United States in *Erie R. Co. v. Board of Public Utility Comm'rs,* 254 U. S. 394, 41 Sup. Ct. 169, where it is

explicitly held that a state may require a railroad company to do away with grade crossings of public streets whether laid out before or after the construction of the railroad, and may place upon the company the expense of executing the state's plan to accomplish this by running the streets over or beneath the tracks. It follows as a logical consequence that the state may minimize the dangers attending such crossings by rearranging and reconstructing its highways so as to divert a portion of the traffic from such crossings, and require the railroad company to pay a reasonable proportion of the expense attending such projects.

If the state has it within its power to compel an absolute separation of grade crossings so as to utterly remove the dangers thereof and place the expense upon the railroad company, there is no reason why it may not treat the railroad company with greater consideration, and, instead of compelling it to bear the entire expense of separation of grade crossings, compel it to bear but a portion of the lesser expense of so rearranging and reconstructing its highways as to minimize the dangers of such crossings. The state having the power to abolish them, certainly has the power to minimize the dangers of such crossings. The state is not obliged to exercise all of its power in such behalf or none at all. Such was the holding of this court in *Chicago & N. W. R. Co. v. Railroad Comm.* 178 Wis. 485, 491, 188 N. W. 86, where it was said: "The state has ample power, in the exercise of the police power, to authorize the relocation of the highway in order to protect the public and to cause the cost thereof to be assessed against the railway company." It has been suggested that this power has been taken away from the states by act of Congress approved February 28, 1920 (ch. 91, 41 U. S. Stats. at Large, p. 456), commonly known as the Transportation Act of 1920, and the case of *Railroad Comm. v. Southern Pac. Co.* 264 U. S. 331, 44 Sup. Ct. 376, is cited in support of this proposition. That case involves an order of the railroad commission of the state of California requiring certain railroad companies to construct a union station in the city of Los Angeles and, incidentally, to rearrange

certain grade crossings. The commission insisted that the order was based upon the power of the state to abolish grade crossings, to which the construction of the union depot was only an incident. The supreme court of California refused to place this construction on the order, and held it to be an order requiring the railroad companies to build a union station as its dominant purpose, while the arrangement of certain grade crossings was only an incident. In the opinion of the supreme court of the United States it is said:

"The state supreme court thus modifies the findings of the railroad commission in so far as they sought to tie the validity of its order establishing a union station to its unquestioned police power to regulate grade crossings in the interest of the public safety. We avoid any inquiry how far, if at all, the principle laid down in *Erie R. Co. v. Board of Public Utility Comm'rs,* 254 U. S. 394, 41 Sup. Ct. 169, is qualified by the provisions of the Transportation Act."

It will thus be seen that the question of the state's power in regulating grade crossings was expressly laid out of the case by the supreme court of the United States, and until there is an express determination to the contrary by that court, this court will assume that the police power of this state in this respect is unaffected by the Transportation Act.

We therefore proceed with the discussion of this case upon the theory that the state possesses full and complete authority and power to promote the public safety either by requiring the railroads to totally abolish grade crossings or to bear a just proportion of the expense incident to a reduction of the dangers of such crossings by rearrangement or relocation of its highways so as to divert a portion of the travel from such crossings. Having settled this power on the part of the state, it becomes necessary now to inquire the manner in which the state has asserted and attempted to exercise this power.

The first legislation upon this subject was embodied in ch. 540, Laws of 1909, which has become, in practically its original form, sub. (1) and (2) of sec. 195.19. This conferred power upon the *Railroad Commission* to order the

abolition of grade crossings and to fix the proportion of the cost and expense thereof to be borne by the railroad companies and the public. The next legislative provision with reference to this subject is to be found in ch. 175 of the Laws of 1917, which was an act creating a state trunk highway system, providing for federal, state, and county co-operation in the construction and maintenance thereof, and making an appropriation. In that act we find the provisions set forth in the margin.[1] These provisions subsequently became sec. 1315 of the Statutes and are now sec. 84.05. It was under these provisions that the highway commission invoked the jurisdiction of the *Railroad Commission* in the proceedings culminating in the order appealed from.

---

[1] 3. (a) Whenever the commission shall, in making plans for the construction of a portion of the trunk system, or of a portion of the system of prospective state highways, which portion has one or more crossings at grade or otherwise with a railroad, street railroad or interurban line, or with two or more such lines, and for the proper construction of said portion it is necessary for the public interest to rearrange or eliminate the highway crossings, put in over-grade or under-grade crossings, or make any other rearrangement of the highways or tracks, the commission shall jointly with the railroad commission outline a plan for the required changes and make an estimate of the cost thereof, including the cost of right of way. The commission shall take up with the railroad company or companies concerned, or other public-service corporation concerned, all matters connected with said plan for construction and shall make suitable arrangements with said companies so that they shall defray a proper portion of the cost of the project, upon such terms as may be mutually agreed upon between the railroad company and the commission.

(b) If the commission shall find it impossible to deal by contract with the companies concerned for a proper distribution and payment of the cost of the work, the commission shall formally lay before the railroad commission of Wisconsin all the facts in the case, together with the plans and estimates and the railroad commission shall review the whole proceedings, hold a hearing or hearings thereon and shall in accordance with the provisions of sections 1797—12 and 1797—12e, of the statutes, fix the portion of the cost which is to be paid by the company or companies concerned and the portion of the cost, if any, to be paid by the public, which public's share shall be provided for in accordance with the provisions of either sections 1312 to 1317, inclusive, or of sections 1317m—1 to 1317m—15, inclusive, of the statutes, except such portion of the cost as the railroad commission may charge to the individual units of government benefited by the improvement of conditions on roads other than those on the above system.

In order to properly understand the appellant's contention in this case, it is necessary to refer to another statutory provision, namely, ch. 255 of the Laws of 1919, enacting what now appears, with some amendments, as sub. (5) of sec. 195.19, Stats. Those provisions are as follows:

"The commission, upon petition of the Wisconsin highway commission, the county board of any county, the common council of any city, the village board of any village or the town board of any town to the effect that one or more of them have undertaken or propose to undertake to relocate an existing highway, to improve an existing highway, or to construct a new highway in such manner as to eliminate an existing highway grade crossing or crossings with any railroad or so as to permanently divert a material portion of the highway traffic from an existing highway grade crossing or crossings with any railroad, shall issue notice of investigation and hearing as provided in section 1797—12, and if upon such hearing the commission shall find that the railroad company or companies in interest will be benefited by said highway relocation, improvement or new construction, the commission shall order said railroad company or companies to pay to the municipality or municipalities in interest such sum of money as the commission shall find to be reasonably equivalent to the benefits received; provided, however, that if said highway relocation, improvement or new construction is financed with joint funds under any federal aid, state aid or county aid highway law, the commission shall order said railroad company or companies to pay said sum of money to the state treasurer, if the work is performed under a federal aid law, or to the proper county treasurer if the work is performed under a state aid or county aid law, and said sum of money shall be added to the joint fund available for the improvement of said highway and may be expended in like manner as the other portions of said fund."

It will be noticed that that enactment authorizes the *Commission* to order a railroad to pay towards the cost of certain highway improvements "such sum of money as the commission shall find to be reasonably equivalent to the benefits received." It should be noted that by ch. 344 of the Laws of 1923, published July 6, 1923, four days before the order

of the *Railroad Commission* here under consideration, the legislature amended the statute just quoted, struck therefrom the words "to be reasonably equivalent to the benefits received," and inserted in lieu thereof the words, "an equitable portion of the cost of such highway relocation, improvement or new construction;" so that at the time the order of the *Railroad Commission* was made it was authorized by this provision to "order said railroad company or companies to pay to the municipality or municipalities in interest such sum of money as the commission shall find to be an equitable portion of the cost of such highway relocation, improvement or new construction;" but whether that amendment affected the power of the *Commission* with reference to this proceeding then pending before it it is unnecessary to determine. .

Appellant contends that at the time this order was entered by the *Railroad Commission* it had no power to order the railroad company to pay anything except under the power conferred by ch. 255 of the Laws of 1919; that under that statutory provision it could only require the railroad company to pay "such sum of money as the commission shall find to be reasonably equivalent to the benefits received;" that it received no benefits by the relocation, hence the *Railroad Commission* could not lawfully require the appellant to pay any portion of the cost of the rearrangement or relocation of state trunk highway No. 12.

Our first answer to this contention is, that that portion of ch. 175 of the Laws of 1917 above quoted authorizes the order entered by the *Railroad Commission*. That provision authorizes the *Railroad Commission* to fix the portion of the cost which is to be paid by the railroad company where "it is necessary for the public interest to rearrange or eliminate the highway crossings, put in over-grade or under-grade crossings, or make any other rearrangement of the highways or tracks." The phrase "make any other rearrangement of the highways or tracks" is most comprehensive, and certainly includes any plan which may be adopted for the purpose of diverting travel from dangerous crossings. We think that the project to the accomplishment of which the

appellant company was required to contribute $12,000 plainly constituted a "rearrangement of highways" which was necessary for and which did promote the public interest and safety, and that to require the railroad company to contribute a portion of the cost of this project was not only within the power of the state; but falls within the express terms of that portion of ch. 175 of the Laws of 1917, now sec. 84.05, above quoted.

The appellant's counsel make an earnest argument to the point that the railroad company is not benefited by this relocation project, for which reason the *Railroad Commission* was without any power to require it to pay any portion of the cost thereof. This is based on the assumption that the only power enjoyed by the *Railroad Commission* in the premises was that referable to sub. (5) of the present sec. 195.19, as it existed prior to the amendment of 1923. In view of the fact that we hold that it had power under sec. 84.05, it seems unnecessary to dwell at length upon a consideration of that argument, especially in view of the fact that the legislature of 1923 struck out the provision for an assessment against the railroad company of an amount equivalent to the benefits received. However, we shall briefly reply to that portion of counsel's argument.

Facts and figures were quoted to show that the business of the company had not improved by reason of this relocation, and the further point was made that it was unfair to require the railroad company to contribute to the building of highways for the benefit of competitors of the railroad companies, referring to the various bus lines which are coming into general operation. In the first place, we are somewhat surprised at the suggestion that the benefit accruing to railroad companies by reason of the elimination of grade crossings or the diversion of traffic therefrom is to be measured by the amount of business done by the company. We apprehend that the existence of grade crossings has no bearing whatever upon the business of the railroad company, and that the benefits accruing to a railroad company by reason of the elimination of grade crossings were never

supposed to be measured in terms of business done by the company. These grade crossings are a source of annoyance and expense to the railroad company just as they are a menace to the public safety. In his reply brief, counsel very truly says: "There are, however, many compensating operating advantages to a railroad when an actual grade separation has taken place." The advantages accruing by such a separation are not to be determined by a reference to the business done by the company but by a reference to the operating advantages accruing therefrom. It seems to us a matter of common knowledge that the elimination of grade crossings is a benefit to the railroad company and that the diversion of traffic from an existing grade crossing is a benefit of the same nature although not to the same degree. This is a benefit that may be difficult to measure in terms of dollars and cents. But in this respect it does not differ from many other cases. The loss of a leg or an arm or a life is a difficult thing to measure in dollars and cents. The damage resulting to a parent from the wrongful death of a minor child is a very illusive subject and one impossible of determination within the degree of mathematical certainty. The statute leaves the determination of that matter to the good judgment of the jury. In all such cases the matter of determining damages or benefits is necessarily left to the exercise of human judgment. If it were not so, there could not be in many cases an accomplishment of justice. So it is in these cases. In order to arrive at a reasonable conclusion, the *Commission* may take into consideration all surrounding facts and circumstances, among which the cost of the separation of grades is by no means the least.

The statute does not attempt to deal unfairly with the railroad company. Our state has never demanded that the entire expense of making these dangerous places safe should be borne by the railroad companies. Neither has the legislature or the *Railroad Commission* entered upon an unreasonable or wholesale campaign to eliminate all dangerous crossings. We think the great power of the state in this behalf has been most reasonably exercised, and there is every

reason to believe that the railroad companies need entertain no apprehension that the state will plunge them into ruin by an inconsiderate exercise of this power.

Touching for a moment the other contention made, that it is unfair to require the railroads to contribute to the building of highways for the benefit of their competitors, it is to be said that highways are not primarily built for any class of people. They are public in their nature, and the bus lines are entitled to use them, subject to legislative regulation and restriction, along with all other members of society. The perfection of the automobile has worked a great transformation in the matter of public travel. Our people demand better highways, and the state is responding to their demands in this respect. These highways are not built for bus-line competitors of the railroads. They are built for all the people, and it is no argument whatever against the justice of requiring railroad companies to bear a portion of the expense in minimizing the danger incident to grade crossings which is increasing in proportion to the increased use of our public highways. This burden is placed upon railroads to promote the public safety by removing sources of dangers which the railroads have created. This is the fundamental basis of the state's power and the state's action in these respects. At any rate, this argument is not one that may be entertained by a court. If it has any force as a legitimate argument anywhere, it may properly be addressed only to the legislature.

We reach the conclusion that the judgment appealed from should be affirmed.

*By the Court.*—So ordered. .