Town of Janesville, Respondent, vs. Chicago & North Western Railway Company, Appellant.

*February 6—March 6, 1951.*

548

For the appellant there were briefs by *Edward H. Borgelt, Richard S. Gibbs,* and *James R. Walker,* all of Milwaukee, and oral argument by *Mr. Gibbs* and *Mr. Walker.*

For the respondent there was a brief by *McGowan, Geffs, Geffs & Block* of Janesville, and oral argument by *Jacob Geffs* and *George S. Geffs.*

FRITZ, C. J.    It appears without dispute that the town road involved in this action had been in existence and was used as a highway for public travel since the year 1843. In 1857 defendant's predecessor in interest acquired in the town of Janesville a one hundred thirty feet wide right of way which crossed the town road by cutting a deep cut through the road; and defendant's predecessor restored the road to such condition that its usefulness was not materially impaired by building a bridge over its railway tracks so that the travel

on the road passed above the railroad traffic. Defendant's predecessor, and subsequently the defendant, maintained the bridge by repairing and reconstructing it until it burned in April, 1943, while its employees were working on its right of way. Since then defendant has failed and refused to restore and reconstruct the bridge so that the town road will be restored to its former state and such condition that its usefulness will not be materially impaired. Plaintiff prayed in its complaint in this action that pursuant to sec. 190.08, Stats., defendant be ordered to reconstruct and restore the highway to its former usefulness by reconstructing and restoring the bridge in question. Instead, as alleged in plaintiff's complaint, defendant by petition began a proceeding before the public service commission of the state to close said highway; but the commission found it would not be in the interest of the public to close said highway and therefore ordered that defendant's petition is denied. Defendant alleges as an affirmative defense in this action that it has taken an appeal from said order of the commission to the circuit court for Dane county; that at the time of the commencement of this action said appeal is still pending and therefore the trial court is without jurisdiction herein, and plaintiff's remedy is not by action at law until such time as said appeal shall have been fully and finally determined by the Dane county circuit court; that on May 11, 1948, the commission took jurisdiction of the controversy which is the subject of this action, as set forth in its docket 2-R-1928, but that the same was dismissed by the commission's order dated October 29, 1948, which recited that on October 19. 1948, the town had advised the commission that it would be desirable for the commission to dismiss the proceeding and that since the investigation had been commenced upon the complaint of the town, same was thereby dismissed; and defendant alleged that jurisdiction of the subject matter and of the parties hereto is vested in said commission and the court is therefore

without jurisdiction in this action, and therefore defendant demands judgment dismissing the plaintiff's complaint herein. On November 16, 1949, defendant secured an order to show cause why the plaintiff's complaint should not be dismissed, or in the alternative continued until the final determination from the order of said commission in its docket 2-R-1934 pertaining to the closing of said town road. Said order to show cause was based on affidavits by defendant's attorney that there was pending in the circuit court for Dane county defendant's appeal from the order of said commission dismissing defendant's application to close said town road; that defendant did not cause or contribute to the cause of the destruction of the original bridge as referred to in the plaintiff's complaint; that the court had no jurisdiction because jurisdiction was in said commission by virtue of docket 2-R-1934, and there was an appeal pending from the commission's order in the circuit court for Dane county; and that if the circuit court reversed the public service commission and closed the road, that to compel defendant to build the bridge would be taking property without due process of law.

In an opinion and order of said commission, dated May 22, 1950, the commission stated:

"The records of hearings in dockets 2-R-1928, 'Investigation on motion of the commission in the matter of the reconstruction of the Black Bridge in the town of Janesville, Rock county,' and 2-R-1934, 'Application of Chicago & North Western Railway Company for authority to close Black Bridge road over its right of way in the town of Janesville, Rock county,' were incorporated as part of the record in this proceeding. . . . In docket 2-R-1934 the commission by order of September 14, 1948, dismissed the petition of the North Western Railway for authority to close the Black Bridge road over its right of way upon a finding that the evidence did not show that the closing of such crossing would promote the public safety. Rehearing was denied the railroad by commission order of October 22, 1948. The railroad brought proceedings to review such orders and the matter

is now pending in circuit court for Dane county. By order of October 29, 1948, the commission dismissed the proceeding in docket 2-R-1928 upon request of the town of Janesville which had decided to pursue its remedies in the courts under sec. 190.08, Stats. On December 14, 1948, the town commenced an action in the circuit court for Rock county praying for an order compelling the railroad to reconstruct the bridge. Such proceeding is now pending. . . . The obvious purpose of the present application for authority to close the Black Bridge road is not to promote the public safety but to permit the railroad to avoid a possible legal obligation to reconstruct the destroyed bridge. The question of the legal obligation to restore the destroyed bridge is for the courts and not for the commission to determine. There can be no hazard to public safety to provide a crossing of a railroad track by an overhead bridge if a court so decides. Upon consideration of the record in this case which includes the records in docket 2-R-1928 and 2-R-1934, the commission finds that public safety would not be promoted by the closing of the Black Bridge road crossing of tracks of the Chicago & North Western Railway Company. . . . The commission finds: . . . 2. That the closing of the Black Bridge road crossing of tracks of the Chicago & North Western Railway Company in the city and town of Janesville, Rock county, will not promote the public safety. . . . The commission concludes: . . . 2. That the matter of the legal obligation of the Chicago & North Western Railway Company to restore the destroyed Black Bridge is for the courts and not a matter within the jurisdiction of the commission to determine. . . . It is therefore ordered: That the application of the Chicago & North Western Railway Company herein be and the same hereby is denied."

On November 3, 1949, there was served on defendant plaintiff's motion based on attached affidavits for summary judgment in this action. Apparently in none of the proceedings stated above was there then in effect any order staying proceedings in this action for a mandatory injunction to compel defendant to restore the bridge on the town road to its former state of usefulness as a public highway.

The town road in question was laid out in 1843, and ever since was used as a public highway. When defendant's predecessor constructed its railroad in 1857 across that road by cutting a deep cut through the town road, it restored said road by building a bridge over the railroad tracks so that the highway was in such condition that its usefulness was not materially impaired and so that public travel on the highway passed above the railroad traffic until the bridge was destroyed by fire in 1943. Since then defendant has refused to reconstruct the bridge and thus restore the highway to its former state or to such condition that its usefulness shall not be materially impaired as required by provisions in sec. 190.08, Stats., that,—

"Every corporation constructing, owning, or operating a railroad shall restore every watercourse, street, highway, road, or canal across, along, or upon which such railroad may be constructed to its former state or to such condition that its usefulness shall not be materially impaired and thereafter maintain the same in such condition against any effects in any manner produced by such railroad. . . ."

In enforcing compliance with that statute by a mandatory injunction, this court stated in *Jamestown v. Chicago, B. & N. R. Co.* 69 Wis. 648, 651–653, 34 N. W. 728:

"The action is for a mandatory injunction to compel the defendant company to restore to its former state of usefulness a public highway which it has practically destroyed in making its railroad track. . . . The relief asked is that the defendant be enjoined from further obstructing the highway, and that it be ordered to restore it to its former state, or to such condition that its usefulness will not be materially impaired as a highway.

"The main objection to the complaint is that the town has no right to bring the action; . . . Every railroad company is authorized to construct its roadbed across or along the highway, upon condition that it restores such highway to its

former state of usefulness. Secs. 1828, 1836, R. S. Now, the town seeks to enforce the performance of this plain, positive, statutory duty for the benefit of its citizens. The complaint alleges that the town requested the defendant to perform this legal duty, with which request it has failed to comply. Upon the allegations of the complaint, it appears *prima facie* that ample time has elapsed since the defendant destroyed the highway to restore it for public travel. . . . The injury is of so serious a character that the restoring of the highway to its former condition is the only remedy which will meet the requirements of the case. Upon the facts stated, we think the court should exercise its jurisdiction by mandatory injunction to compel the defendant to perform that duty. The authorities upon injunction warrant such an exercise of the writ."

As the court stated in *Oshkosh v. Milwaukee & Lake Winnebago R. Co.* 74 Wis. 534, 536, 538, 43 N. W. 489, in enforcing compliance with said provisions in sec. 190.08, Stats.:

"It is contumacious and wrongful conduct for the officers of a railroad corporation to occupy a public highway with its track, practically destroying the street for purposes of public travel, and then defy or disregard all law and all authority invoked to compel them to repair the wrong which they had done the public. The courts would be impotent indeed if they could not correct such flagrant invasions of public right.

"The legislature has seen fit to authorize a railroad company to construct its track across and along the highway, subject to the express condition that it restore the highway to its former state of usefulness, or that it does not materially impair the highway for public travel, and maintains it in that condition afterwards. But the duty to restore and keep in repair is coupled with the privilege to use and occupy the highway for its track; and if the corporation will not perform its duty it should not enjoy the easement granted. These considerations are in accord with the most obvious principles of justice and public rights. . . .

"A mandatory injunction would seem to be the only adequate remedy to redress the wrong to the public rights, and is fully warranted by the facts stated in the complaint."

When defendant's predecessor in constructing the railroad in 1857 traversed the then existing town road by making a deep cut which made it impossible to restore the road to its former state, the railroad performed the second alternative of the statute by restoring the highway "to such condition that its usefulness shall not be materially impaired," by building the bridge that carried the highway over the deep cut and the railroad tracks; and defendant, in compliance with the provisions in sec. 190.08, Stats., "thereafter maintained the same in such condition *against any effects* in any manner produced by such railroad" by maintaining the bridge until it burned in 1943. The *"effects in any manner produced by such railroad"* obviously include the deep cut which was made across this highway in 1857, because of which a bridge for the road became necessary. As stated in the *Application of Kaiser,* 171 Wis. 40, 46, 174 N. W. 714, 176 N. W. 781,—

"The requirement [in sec. 190.08] that the railroad company shall restore the highway to its original state of usefulness does not contemplate a subway or viaduct, unless that be necessary owing to the topography of the *locus in quo* to restore it to its former state of usefulness. . . . The requirement that the highway shall be restored to its original state of usefulness was to the end that travel might proceed in its accustomed way."

And as the trial court stated in the case at bar:

"While the statute under consideration was adopted at an early day when the separation of grade crossings was not generally considered, there can be no doubt but that the statute has been held to apply to situations involving a separation of grades and the restoration of a crossing above the grade of the railroad tracks. Such a construction of the statute is a practical necessity in the present case where 'ow-

ing to the topography of the *locus in quo,*' the construction of a bridge is essential if the defendant is to meet the 'requirement that the railroad company shall restore the highway to its original state of usefulness.'"

The method adopted for that purpose by defendant's predecessor, and evidently accepted by the town, was the construction by the railway company of the bridge over the deep cut as a compliance with the railroad's statutory duty from 1857 to 1943 due to the topography of the *locus in quo.* Defendant's obligations under the statute do not admit of diminishing its statutory duty to restore the highway "to such condition that its usefulness shall not be materially impaired, and thereafter maintain the same." Defendant cannot fulfil its duty by resorting to some other method which would result in a dangerous hazard to traffic so that it would be necessary for the public service commission to close the road in the interest of public safety. As stated in *Polk v. Railroad Comm.* 154 Wis. 523, 525, 143 N. W. 191,—

"Sec. 1836, Stats., requires railway companies to restore highways which they cross to their former state, or to such condition that their usefulness will not be materially impaired, and to thereafter maintain them in such condition. This was at best a safety statute in a limited sense only. It did not prohibit grade crossings, provided the surface of the highway was restored to substantially the same condition in which it was before the crossing was made. If a crossing at grade would leave any depression or elevation in the road at the point of crossing that would materially impair its use and it was necessary to cross above or below grade in order to avoid such a condition, it was undoubtedly the duty of the railroad company to do so."

Likewise applicable in this case is the statement in *State ex. rel. Boddenhagen v. Chicago, M. & St. P. R. Co.* 164 Wis. 304, 308, 159 N. W. 919, that,—

"Whether the viaduct was wrongfully broken down by a person who ran a steam shovel over it or not is immaterial

so far as the duty of the railway company to maintain the viaduct is concerned. The railway company assumed the obligation to erect and maintain the viaduct. The word 'maintain' has a well-defined meaning and includes keeping up, preserving, and rebuilding in case of destruction. *Benson v. New York,* 10 Barb. 223; *Kendrick & Roberts v. Warren Bros. Co.* 110 Md. 47, 72 Atl. 461; *Louisville & N. R. Co. v. U. S. I. Co.* 118 Tenn. 194, 101 S. W. 414."

Defendant contends the court erred in entering judgment in the sum of $110 "for costs, service of summons, and clerk's fees," without service of the notice and a bill of costs as prescribed in sec. 271.10, Stats. The required notice was not served on defendant. But in connection with the court's written and signed order granting the mandatory injunction, it further ordered that defendant pay to plaintiff $110 "for costs, service of summons, and clerk's fees." As the case is an equitable action, and sec. 271.02 (2), Stats., provides that in such an action that the court may fix the costs not to exceed $100, the taxation of $100 as costs was permissible under said signed order, but the taxation of $10 (presumably for service of summons and clerk's fees) in excess of said $100 was unauthorized and erroneous, in the absence of service of the notice required by sec. 271.10 (1), Stats. Consequently, in that respect the judgment for costs must be reduced to $100; and in respondent's brief on this appeal it consents to strike $10 from the judgment for costs.

*By the Court.*—Judgment affirmed with the exception that the item for costs taxed in the trial court is reduced to $100.