WESTRING, statutory representative of petitioners for Incorporation of the Town of Allouez, Brown County, Wisconsin, Appellant, v. JAMES, acting director, Bureau of Local & Regional Planning, Respondent.

No. 125 (1974). *Argued October 27, 1975.*—*Decided February 23, 1976.*

(Also reported in 238 N. W. 2d 695.)

464

For the appellant there was a brief by *David L. Walther,* attorney, and *Walther & Halling* of Milwaukee, and *Westring & Martinson* and *Condon & Hanaway* of counsel, all of Green Bay, and oral argument by *Mr. Walther.*

For the respondent the cause was argued by *John C. Murphy,* assistant attorney general, with whom on the brief was *Victor A. Miller,* attorney general.

HEFFERNAN, J.    This appeal is from a judgment which affirmed the determination of the respondent, acting

director of Bureau of Local & Regional Planning, which recommended the dismissal of a petition brought by Richard W. Westring and others for the incorporation of the town of Allouez, Brown county, Wisconsin. We affirm the trial court and conclude that the planning director did not exceed his statutory authority, that the decision was based upon proper and lawful procedure, that the evidence was sufficient to support the planning director's decision, and that the powers exercised by the planning director under sec. 66.016 (2) (d), Stats., were not the result of an unconstitutional delegation of legislative power.

The general procedure under which this incorporation petition was brought is outlined in secs. 66.013 to 66.018, Stats. Insofar as the incorporation of a village is concerned, it is required that incorporations be approved for referendum only when, after hearing, it is found that the requirements of sec. 66.015[1] and sec. 66.016 (1) and (2)[2] are satisfied. The planning director found, after

[1] Compliance with the standards set forth in sec. 66.015, Stats., are not questioned on this appeal.

[2] "66.016 **Standards to be applied by the head of the planning function.** (1) The head of the planning function may approve for referendum only those proposed incorporations which meet the following requirements:

"(a) *Characteristics of territory.* The entire territory of the proposed village or city shall be reasonably homogeneous and compact, taking into consideration natural boundaries, natural drainage basin, soil conditions, present and potential transportation facilities, previous political boundaries, boundaries of school districts, shopping and social customs. An isolated municipality shall have a reasonably developed community center, including some or all of such features as retail stores, churches, post office, telephone exchange and similar centers of community activity.

"(b) *Territory beyond the core.* The territory beyond the most densely populated one-half square mile specified in s. 66.015 (1) or the most densely populated square mile specified in s. 66.015 (2) shall have an average of more than 30 housing units per quarter section or an assessed value, as defined in s. 66.021 (1) (b) for real estate tax purposes, more than 25% of which is

hearing, that all of the statutory requirements were satisfied with the exception of that set forth in sec. 66.016 (2) (d). That portion of the statutes requires:

"There shall be an express finding that the proposed incorporation will not substantially hinder the solution of governmental problems affecting the metropolitan community."

The initial attack by the petitioners, Westring and others, is on the ground that sec. 66.016 (2) (d), Stats.,

---

attributable to existing or potential mercantile, manufacturing or public utility uses. The territory beyond the most densely populated square mile as specified in s. 66.015 (3) or (4) shall have the potential for residential or other urban land use development on a substantial scale within the next 3 years. The head of the planning function may waive these requirements to the extent that water, terrain or geography prevents such development.

"(2) In addition to complying with each of the applicable standards set forth in sub. (1) and s. 66.015, any proposed incorporation in order to be approved for referendum must be in the public interest as determined by the head of the planning function upon consideration of the following:

"(a) *Tax revenue.* The present and potential sources of tax revenue appear sufficient to defray the anticipated cost of governmental services at a local tax rate which compares favorably with the tax rate in a similar area for the same level of services.

"(b) *Level of services.* The level of governmental services desired or needed by the residents of the territory compared to the level of services offered by the proposed village or city and the level available from a contiguous municipality which files a certified copy of a resolution as provided in s. 66.014 (6).

"(c) *Impact on the remainder of the town.* The impact, financial and otherwise, upon the remainder of the town from which the territory is to be incorporated.

"(d) *Impact on the metropolitan community.* The effect upon the future rendering of governmental services both inside the territory proposed for incorporation and elsewhere within the metropolitan community. There shall be an express finding that the proposed incorporation will not substantially hinder the solution of governmental problems affecting the metropolitan community."

unconstitutionally delegates legislative power to the head of the planning function.

Basically, the attack upon the statute is twofold—that the delegation of legislative power is not hedged about with definitive standards which circumscribe the legislative duties which may be exercised by the administrator, and that the void in the standards cannot be supplied because the statute itself fails to give any indication of the legislative purpose. We believe that these two aspects of the propriety of the delegation of power are so intertwined that they must be considered together.

Sec. 66.013 (1), Stats., defines the purpose that the legislature sought to have served by the sections under consideration. It states:

"It is declared to be the policy of this state that the development of territory from town to incorporated status proceed in an orderly and uniform manner and that toward this end each proposed incorporation of territory as a village or city be reviewed as provided in ss. 66.013 to 66.019 to assure compliance with certain minimum standards which take into account the needs of both urban and rural areas."

The purpose of these very sections of the statutes was considered in *Scharping v. Johnson* (1966), 32 Wis. 2d 383, 145 N. W. 2d 691. Therein we said:

" 'The legislature in its 1959 session made substantial changes in the statutory law governing the overall problem of municipal incorporation and urban expansion. A dominant change was a legislative recognition that many localities of the state were experiencing a substantial urban growth and that the existing legislation permitted haphazard, unrealistic, and competitive expansion without regard for present and probable future development in the best overall public interest.' . . ." (P. 396)

"The legislative note attached to Assembly Bill No. 226, A, of the 1959 legislative session reads in part:
" 'The impact of an incorporation on a metropolitan community must also be considered. To prevent frag-

mentation of an urban area the director is required to make "an express finding that the proposed incorporation will not substantially hinder the solution of governmental problems affecting the metropolitan community" of which the territory is a part.' (p. 2)" (Pp. 396, 397)

The purpose of these provisions has therefore been set forth in the statutes and has been stated clearly in decisions heretofore made by this court. Under these circumstances, the statement of this court in *Watchmaking Examining Board v. Husar* (1971), 49 Wis. 2d 526, 536, 182 N. W. 2d 257, is controlling. We stated in that case:

"A delegation of legislative power to a subordinate agency will be upheld if the purpose of the delegating statute is ascertainable and there are procedural safeguards to insure that the board or agency acts within that legislative purpose."

In *Schmidt v. Department of Local Affairs and Development* (1968), 39 Wis. 2d 46, 158 N. W. 2d 306, this court carefully considered the question of the delegation of legislative power to the planning director, an agency wholly within the control of the legislature. We emphasized therein that broad grants of legislative powers will be permitted where there are procedural and judicial safeguards against arbitrary, unreasonable, or oppressive conduct of the agency. We stated in *Schmidt* that the planning director is dependent upon the will of the legislature and that his powers, if abused, are subject to legislative correction. In addition, as we have stated above, the statutes define a broad area of legislative purpose within which the agency is permitted to operate.

The statute is also hedged about with procedural safeguards, and the decision of the head of the planning function is specifically made subject to review in the courts by sec. 66.017 (2), Stats.

*Schmidt, supra,* emphasizes the fact that legislative powers which may be delegated to the courts are very

limited. *Schmidt* discusses *In re Incorporation of Village of North Milwaukee* (1896), 93 Wis. 616, 67 N. W. 1033, and *In re City of Beloit* (1968), 37 Wis. 2d 637, 155 N. W. 2d 633. The courts cannot be delegated the legislative responsibility of determining what is "in the public interest" in respect to the creation of municipalities. This is a legislative function that may not be delegated to another branch, but, as *Schmidt* emphasized:

"The legislative agency or director is, in fact, an arm or agent of the legislature itself. The very existence of the administrative agency or director is dependent upon the will of the legislature; its or his powers, duties and scope of authority are fixed and circumscribed by the legislature and subject to legislative change. An administrative agency does not stand on the same footing as a court when considering the doctrine of separation of powers." (Pp. 56, 57) *See also: Chicago & North Western Railway Co. v. Public Service Comm.* (1969), 43 Wis. 2d 570, 169 N. W. 2d 65.

In the instant case the required finding for incorporation—the finding the director concluded he could not make—was "that the proposed incorporation will not substantially hinder the solution of governmental problems affecting the metropolitan community." While that standard is phrased in exceedingly general terms, as we pointed out in *Schmidt,* the problem facing the director was one that does not admit of the application of more than the most general standards. Similar broad standards have been upheld in *David Jeffrey Co. v. Milwaukee* (1954), 267 Wis. 559, 66 N. W. 2d 362, and *Smith v. Brookfield* (1956), 272 Wis. 1, 74 N. W. 2d 770. The latter case stated, page 10, in respect to the delegation of power by a city council:

"Having declared the various purposes which the entire zoning ordinance was intended to accomplish, the council could expect the board to apply in each particular case the particular objective applicable thereto. Certainly it could properly assume that the board would not ignore

its declaration of purposes but would effectuate them in the discharge of its duties. . . ."

The same principle is applicable here. There is no requirement that there be specific standards with regard to all of the items which the legislature thought worthy of consideration. Every incorporation will differ on its facts, and it is within the legislative delegation to the administrative director to determine in which respects the enumerated considerations are pertinent to the effectuation of the broad legislative standards. The power conferred upon the administrator is, in addition, limited by the procedural requirements set forth in the statute and the authority of the courts to review the director's determination in accordance with the requirements of the Administrative Procedure Act.

We conclude, in respect to the petitioners' argument that there were not sufficiently defined legislative standards, that the legislature stated the general purpose with sufficient clarity that it can be determined that it is the legislature's will and not that of the administrator which was served by following consideration guidelines enumerated in sec. 66.016 (1) and (2), Stats.

The petitioners herein also argue that the planning director exceeded his statutorily conferred authority because he made no finding in respect to the level of governmental services referred to in sec. 66.016 (2) (b), Stats. A careful reading of the statute, however, indicates that the head of the planning function is not required to make a "finding" in that respect. Rather, the director must find that the proposed incorporation must be "in the public interest" upon the *consideration* of the level of services. That sec. 66.016 (2), at least in respect to (a), (b), and (c), does not require an express finding in respect to tax reviews, level of services, and impact on the remainder of the town, is confirmed by the different statutory mandate required of the director in respect

to (d), the impact of the incorporation upon the metropolitan community. That section, 66.016 (2) (d), requires "an express finding that the proposed incorporation will not substantially hinder the solution of governmental problems affecting the metropolitan community."

Although express findings with respect to the first three matters to be considered are not required, the planning director nevertheless found that the level of services "are adequate for the proposed village and compare favorably with the service levels of the adjoining municipalities."

Nor are the findings made by the director under sec. 66.016 (2) (d), Stats., deficient. The statute is peculiarly worded, in that the incorporation can proceed only if there is a finding that it will *not* substantially hinder the solution of governmental problems. Obviously, this requirement for a finding places a very substantial burden on the proponent of incorporation. The director fulfilled his duty when he stated that, under the record, the express finding required for the incorporation to proceed to referendum could not be made.

The petitioners fault this conclusion, because it is alleged that the director relied on generalized studies that indicated that the incorporation of small areas adjacent to a metropolitan city would hinder the solution of problems that affect a metropolitan community.

While this is in part true, nevertheless, the record shows that the planning director then distilled these generalized propositions and applied them to the specific metropolitan community under consideration. The record shows that the director utilized studies particularly applicable to the area of which Allouez was a part and applied generalized standards specifically to the Allouez situation.

It should be emphasized again that the petitioners had the difficult burden of proving a negative. The use of the generalized studies which the director laid alongside

the specific Allouez situation merely demonstrated that the facts were insufficient to make the finding required by the statute.

The petitioners also contend that sec. 227.10 (2) of the Administrative Procedure Act was violated in that the planning director based his decision, in part at least, upon four United States government reports that were never made a part of the record, but of which he took judicial notice. Sec. 227.10 (2) provides:

"227.10 **Evidence and official notice.** In contested cases:
"...
"(2) All evidence, including records and documents in the possession of the agency of which it desires to avail itself, shall be duly offered and made a part of the record in the case. Every party shall be afforded adequate opportunity to rebut or offer countervailing evidence."

As the statute itself provides, this evidentiary rule applies only in "contested cases." "Contested case" is defined in sec. 227.01 (2), Stats.:

" 'Contested case' means a proceeding before an agency in which, after hearing required by law, the legal rights, duties or privileges of any party to such proceeding are determined or directly affected by a decision or order in such proceeding and in which the assertion by one party of any such right, duty or privilege is denied or controverted by another party to such proceeding."

This court has recently summarized the elements that must appear before a proceeding becomes a "contested case":

"First, there must be a hearing required by law. . . . Second, the legal rights, duties or privileges of one party must have been determined or adversely affected by the proceeding. . . . Third, the assertion of those rights, duties or privileges must have been denied or controverted by another party to the proceeding." *Daly v. Natural Resources Board* (1973), 60 Wis. 2d 208, 216, 217, 208 N. W. 2d 839.

*Ashwaubenon v. State Highway Comm.* (1962), 17 Wis. 2d 120, 115 N. W. 2d 498, is relied upon by the director to demonstrate that the proceedings did not constitute a contested case and, therefore, the evidentiary provisions of sec. 227.10 (2), Stats., are not applicable.

The petitioners are correct in stating that the director and the circuit court gave overbroad application to the general proposition that a legislative proceeding cannot be a contested case. *Ashwaubenon* specifically precludes that generalization and points out that the existence of a legislative-type hearing does not necessarily mean that the proceeding is not a contested one. As we stated in *Scharping v. Johnson, supra,* the proceeding for the incorporation of a village is, however, essentially a matter of the implementation of legislative policy. It is legislative action in the true sense of the word. But as *Ashwaubenon* points out, that factor in itself is not determinative of the evidentiary rule applicable to contested cases. *Ashwaubenon* held, page 128:

"The town of Ashwaubenon had only the same interest in the proposed relocation as any other affected municipality or landowner; it did not have any *special kind of interest* which would convert the proceedings before the highway commission into a contested case.

"When the legislature defined a contested case in sec. 227.01 (2), Stats., it contemplated some special interest such as occurred in *Hall v. Banking Review Board* (1961), 13 Wis. 2d 359, 108 N. W. 2d 543." (Emphasis supplied.)

Under the statutes, it is apparent that the head of the planning function is obliged to find that the proposed incorporation "must be in the public interest." Sec. 66.016 (2), Stats. This general criterion, therefore, is a matter of public policy and statecraft and not in any sense a judicial question. *See: In re Incorporation of Village of North Milwaukee* (1896), 93 Wis. 616, 624, 67 N. W. 1033.

The issues in the instant case fall under the general aegis of *Ashwaubenon* and not under the *Hall* category, because, under *Hall,* the issue was whether a particular bank should be licensed, while in the instant case, as in *Ashwaubenon,* the question is basically a matter of public policy and not a question of fact. This distinction is referred to in Davis, *The Requirement of a Trial-Type Hearing,* 70 Harv. L. Rev. 193 (1956) :

". . . the trial type of hearing is designed for disputed facts about particular parties and is not necessarily required for development of general facts or for issues of law or policy or discretion." (P. 194)

"The problem of the need for a trial type of hearing, that is, for what the Administrative Procedure Act calls a determination 'on the record after opportunity for an agency hearing,' is the same problem . . . as the problem of use of extrarecord facts, fully developed in discussions of official and judicial notice. For purposes of this problem, facts are of two kinds: adjudicative and legislative. Adjudicative facts are facts about the parties and their activities, businesses, and properties, usually answering the questions of who did what, where, when, how, why, with what motive or intent; adjudicative facts are roughly the kind of facts that go to a jury in a jury case. Legislative facts do not usually concern the immediate parties but are general facts which help the tribunal decide questions of law, policy, and discretion." (P. 199)

These proceedings and the facts of which the director of planning took judicial notice did not apply to a particular party, but were, rather, of a generalized nature and bore upon questions of law, policy, and discretion; that is, whether the incorporation would hinder the solution of governmental problems of the metropolitan community. The petitioners in this case lacked any "special kind of interest" that is necessary for the finding of a contested case. The only type of interest under scrutiny in the instant case was the public interest, and whether

private interests incidentally are served or not served is not a criterion under the statute.

We accordingly conclude that there was no contested case within the meaning of sec. 227.10 (2) of the Administrative Procedure Act. As in *Ashwaubenon*, the hearing in the instant case was a part of the investigative process delegated by the legislature to the head of the planning function, and the purpose of the hearing was to aid the director in his comprehension of the problems involved and to assist in his statutory duty of determining whether the proposed incorporation would serve the public interest. The director's reliance upon governmental reports outside of the record was permissible. The circuit court's finding in that respect was in accordance with the statutes and settled case law.

The petitioners also argue that the circuit court erred in concluding that the substantial-evidence requirement of sec. 227.20 (1) (d), Stats., was inapplicable and state that only the test of arbitrariness and capriciousness was applicable. We agree with the petitioners that the substantial-evidence rule is applicable to the instant case.

While, in some cases, and in *Daly, supra,* upon which the trial judge relied, we have held that the substantial-evidence test is only to be applied in contested cases, the particular statute with which we are concerned specifically provides that the decision of the head of the planning function shall be subject to judicial review as provided in ch. 227 (sec. 66.017 (2), Stats.). Moreover, we have stated in *Scharping v. Johnson, supra,* and *Town of Pleasant Prairie v. Johnson* (1967), 34 Wis. 2d 8, 148 N. W. 2d 27, that a review of the planning director's determination under the statutes is to be controlled by sec. 227.20, even though the director's decision is an exercise of the legislative function.

Sec. 227.20 (1), Stats., provides in part that a court may reverse or modify a decision of an agency if it is:

"(d) Unsupported by substantial evidence in view of the entire record as submitted; *or* (e) Arbitrary or capricious."

It is clear from this provision of the statute that both the substantial-evidence test and the arbitrary-and-capricious test must be satisfied whenever a review under sec. 227.20, Stats., is mandatory. It should be noted, however, that, in almost any case that comes to mind, a decision which is supported by substantial evidence ordinarily would be held not to be arbitrary or capricious.

The test of substantial evidence was stated in *Ashwaubenon, supra,* at page 131. Therein we said, ". . . the test is whether reasonable minds could arrive at the same conclusion reached by the commission." While one may disagree with the conclusion that the planning director eventually reached, it cannot be said that a reasonable person could not have reached the conclusion that he did. The record is replete with the course of reasoning utilized by the director of planning to reach his conclusion. It cannot be said, therefore, that on the basis of the evidence it was wholly unreasonable to reach the conclusion that the director did. *See also: Gateway City Transfer Co. v. Public Service Comm.* (1948), 253 Wis. 397, 34 N. W. 2d 238, for the same proposition.

The test which we have applied to determine whether there was substantial evidence in light of the record to affirm the planning director's conclusion is also dispositive of the question of whether the director's action was arbitrary and capricious. The standard of arbitrariness and capriciousness was discussed in *Scharping, supra,* page 390:

" 'It is, in general, the most flagrant violations of the scope of delegated discretionary powers which are described as capricious. In common usage, the term refers to a whimsical, unreasoning departure from established norms or standards; it describes action which is mercurial, unstable, inconstant, or fickle. In legal usage, a

decision is capricious if it is so unreasonable as to "shock the sense of justice and indicate lack of fair and careful consideration."

" 'Typical of the cases in which the epithet *capricious* may properly be applied are those where an agency has given different treatment to two respondents in identical circumstances, or has exhibited an irrational unfairness which suggests malice or discrimination.' 2 Cooper, *State Administrative Law* (1965), p. 761."

In *Olson v. Rothwell* (1965), 28 Wis. 2d 233, 239, 137 N. W. 2d 86, we stated:

"Arbitrary or capricious action . . . occurs when it can be said that such action is unreasonable or does not have a rational basis. . . . Arbitrary action is the result of an unconsidered, wilful and irrational choice of conduct and not the result of the 'winnowing and sifting' process." *See also: Chicago & North Western Railway Co. v. Public Service Comm.* (1969), 43 Wis. 2d 570, 582, 169 N. W. 2d 65.

Again, while the conclusion that was drawn from the evidence by the director may have been one with which other reasonable persons might disagree, it cannot be said that it constituted wilful or irrational choice of conduct.

We accordingly conclude that the decision was not arbitrary or capricious and was supported by substantial evidence in view of the entire record.

*By the Court.*—Judgment affirmed.

ROBERT W. HANSEN, J. *(dissenting).* The parting of the ways with the court majority comes at the point where the majority holds that these petitioners were not entitled to a full and fair hearing on their petition for incorporation of their town as a village.[1]

---

[1] The petition for incorporation of the town of Allouez as a village was filed in the Brown county circuit court pursuant to secs. 66.013–66.018, Stats.

That a full and fair hearing is statutorily required in an administrative agency hearing, prior to the disposition of any contested case, is acknowledged and not at issue.[2]

One requirement of the "fair play" provisions of the administrative procedure statute is that all evidence, including documents, shall be made part of the record, with all parties to be afforded an adequate opportunity to rebut or offer countervailing evidence. The subsection involved requires:

"(2) All evidence, including records and documents in the possession of the agency of which it desires to avail itself, shall be duly offered and made a part of the record in the case. Every party shall be afforded adequate opportunity to rebut or offer countervailing evidence."[3]

It is unchallenged that this requirement for a full and fair hearing was not here met. On the key issue of impact of the incorporation on the neighboring city, the hearing officer's decision relied and quoted from four federal government reports that were never made part of the report, and which the appellant had no opportunity to rebut. Additionally, no notice was given to appellant that these reports were to be used by the hearing officer.[4] Thus the procedural requirements for a "fair play" hearing were not here met. All parties involved concede that they were not met.

Unless the hearing on this petition for incorporation can be held to have been not contested, it follows that

[2] Secs. 227.07 through 227.13, Stats., commonly referred to as the "fair-play provisions" of the Wisconsin Administrative Procedure Act (ch. 227).

[3] Sec. 227.10 (2), Stats.

[4] Sec. 227.10 (3), Stats., providing: "Agencies may take official notice of any generally recognized fact or any established technical or scientific fact; but parties shall be notified either before or during hearing or by full reference in preliminary reports or otherwise, of the facts so noticed, and they shall be afforded an opportunity to contest the validity of the official notice."

appellant's right to a full and fair hearing was denied. The statute defines a "contested case" in an administrative adjudication as follows:

" 'Contested case' means a proceeding before an agency in which, after hearing required by law, the legal rights, duties or privileges of any party to such proceeding are determined or directly affected by a decision or order in such proceeding and in which the assertion by one party of any such right, duty or privilege is denied or controverted by another party to such proceeding."[5]

In 1973, in a case, the *Daly Case*,[6] here controlling as to the construction to be given this statute, our court held:

"From the statute it is clear that *three elements* must appear before the proceeding becomes a contested case. First there must be *a hearing required by law*. . . . Second, the legal *rights, duties or privileges* of one party must have been *determined or adversely affected* by the proceeding. . . . Third, the *assertion of* those *rights,* duties or privileges must have been denied or *controverted by another party* to the proceeding."[7] (Emphasis supplied.)

All three required elements are in the case before us. First, as to the hearing being required by law, the hearing here involved was required by sec. 66.014 (9), Stats. Second, as to rights being determined or adversely affected, the right or privilege of residents of the town to incorporate as a village under secs. 66.013–66.018 was determined and certainly adversely affected by the decision of the planning director. Third, the assertion of that right or privilege to incorporate was denied and controverted at the hearing by the city attorney of Green Bay, acting on behalf of such municipality. Unless the clear language of the statute and the equally clear mandate of the *Daly Case* are to be ignored, it is evident

[5] Sec. 227.01 (2), Stats.

[6] *Daly v. Natural Resources Board* (1973), 60 Wis. 2d 208, 208 N. W. 2d 839.

[7] *Id.* at pages 216, 217.

that these three requirements were met and that this hearing was indeed a "contested case."

Eleven years before the *Daly Case,* holding that three elements only are involved in determining if an administrative hearing is contested, this court in *Ashwaubenon,*[8] in 1962, dealt with the attempt of a town to challenge a relocation of a state arterial highway by the state highway commission. The commission had held a hearing on relocation which this court held was "merely a part of the investigative processes of the commission and was to aid the commission in its comprehension of the problems involved."[9] (That would not describe the hearing in the case before us, mandated by sec. 66.014 (9), Stats.) It doubted that the town of Ashwaubenon was "an aggrieved party entitled to seek review of the commission's decision."[10] (That would not describe the appellant filing a petition for incorporation under secs. 66.013–66.018, Stats.) It held that the town there involved "did not have any special kind of interest" in the proceeding, but only "the same interest in the proposed relocation as any other affected municipality or landowner. . . ."[11] (That would not describe petitioners for incorporation of their town as a village.) It affirmed what it termed "the breath of the [highway] commission's power in laying out state highways. . . ."[12] For all of these reasons, it held the case not to be contested and concluded that the "fair-play provisions of ch. 227 (secs. 227.07–227.13, Stats., inclusive) do not apply to the case at bar."[13]

The reference to a lack of a "special kind of interest" in *Ashwaubenon* is not to be read as an addition of a

[8] *Ashwaubenon v. State Highway Commission* (1962), 17 Wis. 2d 120, 115 N. W. 2d 498.

[9] *Id.* at page 126.

[10] *Id.* at page 128.

[11] *Id.* at page 128.

[12] *Id.* at page 130.

[13] *Id.* at page 127.

fourth element to the three statutory requirements as to a case being contested. If that were the intent, this court would have added, eleven years later, such fourth requirement to the three-only test set forth in *Daly*. In *Daly*, the *Ashwaubenon Case* is cited but no suggestion is made that it added a fourth requirement to the threefold test as to fact of contest specified in the statute and set forth in *Daly*. Actually, in *Ashwaubenon*, the court was not changing sec. 227.01 (2), Stats. It was applying it, finding all three requirements of sec. 227.01 (2), later stated in *Daly*, not to have been met by the town of Ashwaubenon.

Even if *Ashwaubenon* is read to make *Daly* incomplete and incorrect, it would not help the respondent here. In *Ashwaubenon*, this court said: "When the legislature defined a contested case in sec. 227.01 (2), Stats., it contemplated some special interest such as occurred in *Hall v. Banking Review Board* (1961), 13 Wis. 2d 359, 108 N. W. 2d 533," saying of such *Hall Case* that, "in the bank case there was a particularized and adversary interest affecting both the proposed new bank and the existing bank."[14] In *Hall*, as in the case before us, the hearing held was required by statute. In *Hall*, there was testimony by an existing bank in opposition to a banking license in Glendale being granted to the applicant. In the case before us, there was opposition to the petition for incorporation presented by the city attorney on behalf of the city of Green Bay. The court in *Hall* held that "this proceeding was a contested case because of the opposition to the application by the Whitefish Bay State Bank."[15] In the case before us, it is similarly clear that the hearing became a contested case because of the opposition to it by the city of Green Bay. In the case before us, not only do we have two adversary parties but, on the issue of

[14] *Id.* at page 128.

[15] *Hall v. Banking Review Board, supra,* 13 Wis. 2d at page 367.

impact upon the metropolitan community,[16] we have present in the ring or at the hearing the two principal adversaries—residents of the town seeking incorporation as a village and the legal counsel for the largest city in the metropolitan area involved. Both had adverse interests, special to themselves.

Nor can the denial of a full and fair hearing be upheld on the ground that the hearing or issues before the planning director can be labeled "legislative" rather than "adjudicative." This distinction between "legislative" and "adjudicative" applies only to specific facts being determined by the fact finder. In the processing of an application for lake-fill, our court held that the public service commission "was discharging a legislative function"[17] but, the case being contested, "the fair-play provisions of secs. 227.07 through 227.13 of the State Administrative Procedure Act apply to the proceedings."[18] Even *Ashwaubenon* held that "a legislative-type hearing does not necessarily preclude the matter from being a contested case [under sec. 227.01 (2)]. . . ."[19] Our court has challenged the wisdom of attempting to draw a legislative-adjudicative distinction in administrative agency cases for the obvious reason that in a single proceeding such agency commonly acts in both roles.[20] If the claim

[16] The hearing officer held that the area proposed for incorporation met all statutory standards except that set forth in sec. 66.016 (2) (d), Stats., providing: "(d) *Impact on the metropolitan community*. The effect upon the future rendering of governmental services both inside the territory proposed for incorporation and elsewhere within the metropolitan community. There shall be an express finding that the proposed incorporation will not substantially hinder the solution of governmental problems affecting the metropolitan community."

[17] *Hixon v. Public Service Comm.* (1966), 32 Wis. 2d 608, 621, 146 N. W. 2d 577.

[18] *Id.* at page 622.

[19] *Ashwaubenon v. State Highway Commission, supra,* footnote 8, at page 127.

[20] *See: Margoles v. State Board of Medical Examiners* (1970), 47 Wis. 2d 499, 508, 177 N. W. 2d 353, this court stating: "The

were that under sec. 66.016, Stats., the planning director has been delegated a power to make the law rather than an authority to be exercised only under and pursuant to the law, that would be an unconstitutional delegation by the legislature of its power to make the law.[21] In the case before us, the legislature has determined that certain conditions or standards must be met before the incorporation petition is submitted for referendum. Whether these standards have been complied with is an administrative adjudication, delegated to the head of the planning function, but requiring a hearing to be conducted with notice and under the "fair play" procedures if it is contested.

The writer would reverse and remand, with directions to the circuit court and planning director that a full and fair hearing be held on the petition for incorporation of the town of Allouez as a village be conducted under the rules and procedures of the "fair play" provisions (secs. 227.07 through 227.13) of the Wisconsin Administrative Procedure Act.

---

wisdom of attempting to draw a legislative-judicial distinction in administrative agency cases was criticized by Professor Kenneth Davis in *The Requirement of a Trial-Type Hearing*, 70 Harv. L. Rev. (1956), 193, 202:

" 'One obvious reason why whole proceedings cannot properly be labeled "judicial" or "legislative" is that in a single proceeding a tribunal commonly acts both judicially and legislatively. The processes of resolving disputed facts about particular parties is the essence of the judicial process and calls for a trial type hearing.' " *See also: Id.* at page 200, the author stating: ". . . in the borderland between the two categories the line is sometimes difficult or impossible to draw, and . . . in the borderland the distinction often has little or no utility."

[21] *See: In re Incorporation of Village of North Milwaukee* (1896), 93 Wis. 616, 622, 67 N. W. 1033, this court holding: " 'The legislature cannot delegate its power to make a law, but it can make a law to delegate a power to *determine some fact* or state of facts upon which the law makes, or intends to make, its own action depend.' " (Quoting *Dowling v. Lancashire Ins. Co.* (1896), 92 Wis. 63, 69, 65 N. W. 738.) *See also: Schmidt v. Local Affairs & Development Dept.* (1968), 39 Wis. 2d 46, 60, 158 N. W. 2d 306,

I am authorized to state that Mr. Justice LEO B. HANLEY and Mr. Justice CONNOR T. HANSEN join in this dissent.

adding, "The legislature should not be required to make specific provisions with regard to all of the items it felt necessary to be considered. Each incorporation will differ on its facts and the administrative director determines only whether these facts come within the legislative standards."