TOWN OF PLEASANT PRAIRIE, Kenosha County, Wisconsin, and C. Tom Wood, Richard Randall and Thomas Terwall, Petitioners-Appellants-Petitioners,

v.

DEPARTMENT OF LOCAL AFFAIRS & DEVELOPMENT Respondent.

Supreme Court

*No. 81–1118.  Argued March 29, 1983.—Decided July 1, 1983.*

(Also reported in 334 N.W.2d 893.)

For the appellants-petitioners there were briefs by *Robert D. Sundby* and *DeWitt, Sundby, Huggett & Schumacher, S.C.,* Madison, and oral argument by *Robert D. Sundby.*

For the respondent the cause was argued by *F. Thomas Creeron, III,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general, and *James W. Conway,* city attorney for the city of Kenosha.

Amicus brief was filed by *Burt P. Natkins,* legal counsel, Madison, for the League of Wisconsin Municipalities.

HEFFERNAN, J. This is a review of a court of appeals' decision (108 Wis. 2d 465, 322 N.W.2d 496 (1982)) which affirmed an order of the Kenosha County Circuit Court, JAMES WILBERSHIDE, Judge, affirming the determination of the Director of the Department of Local Affairs and Development dismissing the town of Pleasant Prairie's petition for incorporation. We affirm the court of appeals.

This is the second time that the Town of Pleasant Prairie has attempted to incorporate as a village. This court, in *Pleasant Prairie v. Johnson,* 34 Wis. 2d 8, 148 N.W.2d 27 (1967), upheld an earlier determination that the proposed incorporation did not meet the standards

and requirements of sec. 66.016, Stats., because there was substantial evidence to sustain the director's finding then that there was a lack of reasonable homogeneity.

The instant case arises out of a petition to incorporate the entire Town of Pleasant Prairie, Kenosha County, Wisconsin, as a village pursuant to secs. 66.013–66.018, Stats. The attempt to incorporate was commenced by the filing of petitions with the clerk of circuit court for Kenosha county on March 21, 1979. Following a hearing, the judge of the Kenosha county circuit court, Earl D. Morton, determined that the standards set forth in sec. 66.015, had been satisfied, in that the procedures and formal requirements of sec. 66.014 had been met and that the required notices had been given. The court then referred the petition to the Department of Local Affairs and Development to determine whether the standards set forth by the legislature under sec. 66.016 had been met.

The department held hearings during the course of several days in February of 1980. It took the testimony of numerous witnesses called by the town and the city of Kenosha, and it also elicited testimony from members of the general public and received into evidence quantities of written material and information. The department filed its determination with the circuit court on July 2, 1980.

It determined that the town did not satisfy the statutory standards for incorporation as set forth in sec. 66.016(1) and (2), Stats. Specifically, in respect to sec. 66.016(1)(a) (characteristics of territory), the department's determination concluded that, although the town's external boundaries were compact, its patterns of land use, urban development, transportation facilities, population distribution, and shopping and social customs were neither compact nor homogeneous.

Additionally, the department, applying the standards of sec. 66.016(1)(b), Stats. (territory beyond the core), concluded that the town's limited growth potential did not satisfy the statutorily imposed standard that there be "the potential for residential or other urban land use development on a substantial scale within the next 3 years."

The department also considered the factors enumerated by the legislature in sec. 66.016(2), Stats., and stated that it was unable to conclude or to make "an express finding that the proposed incorporation will not substantially hinder the solution of governmental problems affecting the metropolitan community."

A petition for the review of the department's determination was filed by the town with the circuit court for Kenosha county, as provided by sec. 66.017, Stats. That review is subject to the provisions of the Wisconsin Administrative Practices Act, ch. 227. The circuit court for Kenosha county, Judge James Wilbershide presiding because the Kenosha county circuit judges had disqualified themselves, affirmed the department's decision. The town appealed from that circuit court order, and the court of appeals affirmed. It is from that court of appeals decision of affirmance that this court granted the town's petition for review.

The town's petition for review, which this court granted, posed two questions: First, whether the department erred in interpreting the standards of sec. 66.016, Stats., in a manner which made the approval of the incorporation of an entire town in a metropolitan area difficult or impossible; and, second, whether the department erred when it relied in part, in its determination that it could not say that the proposed incorporation would not substantially hinder the solution of governmental problems affecting the metropolitan community, on general treatises rather than solely relying on the evidence presented.

In addition, this court *sua sponte* ordered the parties to address the two additional issues: (1) Should the court reexamine *Westring v. James,* 71 Wis. 2d 462, 238 N.W. 2d 695 (1976), insofar as it holds the Department of Local Affairs and Development is an arm of the legislature, to which the legislative responsibility of determining what is in the public interest in respect to the creation of municipalities may be delegated; and (2) does sec. 66.016(2), Stats., constitute a violation of art. IV, sec. 31, Wis. Const., as construed in *In re Incorporation of Village of North Milwaukee,* 93 Wis. 616, 67 N.W. 1033 (1896).

While the two questions posed by the court have been admirably briefed by the parties—and we will in this opinion comment on those issues further—we find that neither of them need be addressed in depth to dispose of the case before this court. Rather, we conclude that the petition for incorporation was appropriately dismissed under the standards of sec. 66.016(1)(a) (characteristics of territory), which portion of the statute the town concedes to be constitutional.

The only issue raised in respect to that portion of the statute is whether, as a matter of law, the department improperly interpreted those standards in such a manner that a whole-town incorporation in a metropolitan area was made impossible. The town does not challenge any of the findings of fact and concedes that the specific findings are supported by substantial evidence. The challenge, rather, is to the interpretation placed upon the words of the legislature in sec. 66.016(1), Stats.

The town states that the legally erroneous misinterpretation of the statute arises from the department's overall misperception of legislative intent and that misperception has the result of making whole-town incorpora-

tion in metropolitan areas impossible. Apparently, it is the contention of the town that the department has looked to the admittedly severe legislative restraints upon incorporation of large areas which lie in metropolitan regions and has concluded from that it is the legislature's will that, at least in circumstances where an adjacent city has offered to annex the territory, the purpose of the legislature was to make an independent incorporation substantially impossible. The town has summarized its specific contentions as follows:

"[T]he Department [has] construed Wis. Stat. sec. 66.016 to impose more stringent standards than the 'village-in-fact' requirement of *Lammers;* required the boundaries between the Town and the City to be regular; required absolute homogeneity rather than reasonable homogeneity; required shopping and social customs to be internally oriented; ignored the evident societal homogeneity of the Village; found conditions typical of metropolitan communities to preclude homogeneity; required actual rather than potential development; excluded the substantial existing development beyond the 'core' in determining the development standard was not met; required the proponents to demonstrate that existing services equalled those of the central city; and failed to establish that the alternative of annexation was available."

While the town's brief and the oral argument presented to the court skillfully convey the inference that the department has misinterpreted the statute as a matter of law, a reading of the department's determination leads this court to the conclusion that, in fact, the standards were appropriately and reasonably interpreted in a manner that comports with the legislative intent. It must be conceded that the very strictures placed upon incorporation in metropolitan areas makes such incorporation difficult. The characteristics that naturally evolve in areas bordering upon a major metropolitan community almost dictate facts and physical circumstances that

tend to give some support to a logical conclusion that the outlying areas do not have an independent viability, but a viability that is dependent upon the adjacent metropolis.

At all stages in these proceedings, all parties, including the town, have been in agreement that incorporation of territory in a metropolitan area does indeed present problems that are difficult to surmount. The question is whether the department's interpretation, by misinterpretation, has made these difficulties so onerous that they are impossible to surmount. Whether, under any circumstances, an area situate in respect to a large metropolitan center, as is Pleasant Prairie in respect to Kenosha, could meet the standards is not before us. We must assume that the legislature, by establishing standards, assumed that, at least in some circumstances, incorporation would be possible. We see nothing in the record that indicates any action by the Department which increases the onerousness of the task beyond that which the legislature placed upon areas which seek to incorporate.

The statute, sec. 66.016(1)(a), Stats., provides in part that:

> *"Characteristics of territory.* The entire territory of the proposed village or city shall be reasonably homogeneous and compact, taking into consideration natural boundaries, natural drainage basin, soil conditions, present and potential transportation facilities, previous political boundaries, boundaries of school districts, shopping and social customs."

The requirement of "reasonable homogeneity" shows a legislative concern that the area to be incorporated have a reasonably consistent and uniform composition. The standards set forth in sec. 66.016(1), Stats., indicate that the entire area be a community, that it have common interests that are internally shared.

"Homogeneous" is not defined in the incorporation statutes. "Homogeneous" is defined, however, by Webster's *Third New International Dictionary* as being "of a similar kind or nature." A second definition is "of uniform structure or composition throughout." Another dictionary meaning, given specifically in respect to the term, "community," is that it consist of "uniform elements" throughout.

Accordingly, we conclude that the department, in its court of appeals' brief, appropriately characterized the requirement of homogeneity when it said that requirement:

". . . seek[s] to assure that an incorporated area is urban rather than rural, that development in such an area is not scattered, fragmented, or haphazard, and that similar land uses are grouped together in appropriate municipal boundaries."

This interpretation reflects the legislative intent as stated in the 1959 note to A.B. 226, which became sec. 66.016, Stats. That note pointed out that the territory to be incorporated must possess urban characteristics.

In *Scharping v. Johnson,* 32 Wis. 2d 383, 145 N.W.2d 691 (1966), the court quoted from *Elmwood Park v. Racine,* 29 Wis. 2d 400, 406, 139 N.W.2d 66 (1966) ; and we therein recognized that the 1959 legislation, of which sec. 66.016, Stats., is a part, was a legislative recognition that localities of the state were then experiencing a substantial urban growth. Accordingly, it is reasonable, in light of the legislative history, to conclude that the homogeneity test encompasses the broad requirement of the urban characteristics for the area sought to be incorporated.

In its determination of this fundamental question of whether the city was reasonably homogeneous and compact, the department considered a wide range of matters which were adduced from the evidence. It noted that a

flood plain in the western part of the town constituted a barrier to development and that the soil conditions varied, with large scattered portions being burdened with severe soil limitations, even for residential development, although it was assumed that sanitary sewers would be provided. The determination also pointed out that the town was blessed—or perhaps in light of the particular matter before the Department, burdened—with the fact that there was an extensive transportation system which provided easy access, not only within the area sought to be incorporated, but which caused urban and rural uses to be haphazardly intermixed, and that the road pattern was typical of a central city tributary area.

This latter factor in regard to transportation appropriately suggested to the Department that the town was dependent on the city as its focal point, rather than having an existence as a separate and independent unit. This particular aspect of the department's determination is criticized by the town because any transportation system in a metropolitan area will, under the department's view, adversely affect homogeneity, because transportation, almost by definition or by its inherent function, is designed to allow free interchange between municipalities, as well as within a projected municipality. However, it is indisputable that transportation facilities are a specific characteristic, which the department must consider under sec. 66.016(1), Stats. We think it not unreasonable for the department to consider, not only whether the transportation facilities provide, or will provide, a sound basis for internal travel, but also whether the transportation facilities dissipate homogeneity by facilitating the functioning of the area as a part of the larger city or metropolitan area.

The earlier Pleasant Prairie case, *Pleasant Prairie v. Johnson*, 34 Wis. 2d 8, at 13, specifically upheld the conclusion of the then director that:

" 'The quality of the Town's transportation facilities does not add to its compactness or homogeneity, however. Instead, they facilitate the functioning of the area as a part of the City of Kenosha.' "

Thus, we find that the factor of transportation is not only logically a factor that may tend to counter reasonable homogeneity, but it is a factor under the circumstances here that has been specifically approved by this court as being one which makes it less likely that an area sought to be incorporated can meet the requirement of homogeneity. We agree with the town's implied argument that it would be most unlikely that it could be expected that an area sought to be incorporated which lies within a metropolitan area would have its own separate and independent transportation system. The transportation system, however, was merely one factor which was considered by the department.

The department, consistent with the provisions of the statute, also considered the boundaries of the school district and found that the district included not only the town of Pleasant Prairie, but the city of Kenosha and portions of adjacent towns. This it found to be a homogenizing influence on the entire area of the school district, but not a characteristic which would render the area sought to be incorporated homogeneous. This finding replicates the one made in *Pleasant Prairie v. Johnson, supra,* wherein we gave approval to the department's assertion that:

" 'While the existence of a uniform school system is a characteristic of homogeneity, that homogeneity is, in this case, with the City of Kenosha. From the standpoint of schools the Town, therefore, is not a homogeneous area.' " P. 13.

The department also stated that the land-use patterns in the instant case provided significant information in respect to the nonhomogeneity of the area. The data

adduced at the hearing showed that the town is still largely rural and agricultural. The evidence was that, at the time of the hearing, 53 percent of the land area was devoted to agricultural purposes, and it was estimated that, even by the year 2000, over 50 percent of the land area would remain agricultural. The maps produced in evidence also showed that urban development was occurring in scattered and separate areas. Accordingly, the department concluded that these scattered land-use patterns indicated a lack of homogeneity and a lack of compactness in respect to urban development. The town states correctly that land-use patterns are not one of the criteria listed for consideration in the provisions of sec. 66.016(1)(a), Stats.

We believe, however, that the term, "homogeneous," must be interpreted in light of the statutory purpose set forth in the 1959 commentary to Assembly Bill 226, which states at page 15, "[T]he territory must possess certain urban characteristics."

Hence, it appears that homogeneity has a meaning apart and in addition to the factors listed, and it furthers the legislative purpose to allow the department to consider aspects of development which tend to show homogeneity or lack thereof in respect to land-use patterns—whether urban or not. Certainly, by definition, patterns of development which show that an area has widely scattered areas of residential and industrial development and intervening areas of extensive rural uses indicate that the area is not homogeneous. That is not to say that incorporated areas should not have mixed land uses or that there should not be extensive greenbelt or wetland reservations, but the various developments should be grouped in rational ways and not be scattered "haphazardly" across undeveloped areas.

In *Scharping v. Johnson, supra*, this court upheld a finding that the proposed village, albeit an "isolated vil-

lage," could not meet the requirements of sec. 66.016 (1) (a), Stats., when areas outside the core were substantially rural. Hence, that case supports the department's view that the nature and location of land use is relevant in determining homogeneity, and it would appear that the extensive and haphazard interspersal of rural areas is more relevant to a finding of a lack of homogeneity in a metropolitan-type incorporation than where the incorporation sought is that of an isolated village.

Additionally, we conclude that the department appropriately considered population density and its distribution as factors bearing upon whether or not the proposed village was reasonably homogeneous. The evidence demonstrated that the quarter section populations in the town varied from 0 to 599. The town argues, however, that disparity in population is not one of the considerations listed in the statutes. Moreover, the town argues, correctly we believe, that some disparities in population are appropriate, because it is to be expected that environmental corridors should have zero population counts. The department, however, points out that, even if certain lands in areas that are arguably environmental corridors are not included, the population density between quarter sections will vary by a factor of at least 200.

Again, returning to the basic meaning of the term, "homogeneity," it is apparent that the pronounced variations in population density demonstrate characteristics of the lack of reasonable homogeneity. In *Scharping v. Johnson* we specifically approved the rationale that the ratio or disparity in population between sections of land was relevant to the question of homogeneity. We said:

"There is evidence in the record showing considerable disparity in the population of the sections within the proposed incorporation. The disparity of population ranges from 298 to 29. We conclude that the requirement of homogeneity is not met because of this diversity." P. 392.

The town also argues that, any time a whole town tries to incorporate, there will be substantial disparities between the quarter sections. Thus, if there were an attempt to incorporate only a densely populated area of less than the entire town, incorporation would destroy the tax base of the remainder and run afoul of sec. 66.016(2)(c), Stats., which requires that the department consider "[t]he impact, financial and otherwise, upon the remainder of the town from which the territory is to be incorporated." While this latter consideration is one of the indicia for the determination of "public interest," and not under "characteristics of territory," the town correctly points out the problem which arises under the homogeneity requirement. If this be a "Catch-22," as the town claims, the problem stems from the fact that the statute requires homogeneity and also requires the department to consider the impact of a partial incorporation on the remainder of the town. The problem is clearly legislative in nature and reflects the fact that is apparent from a mere reading of the procedures for the incorporation of villages and cities that the legislature, not the department, has placed substantial obstacles in the path of the incorporation of a city or village which falls within the metropolitan area.

The town also objects to the fact that the department relied on evidence in respect to the shopping and social customs of persons within the area sought to be incorporated. It found that the residents of the town, to a substantial degree, patronized other communities for their employment, shopping, recreation, and health care. This evidence, along with data appropriately admitted from an origin-destination survey conducted by the Southeastern Wisconsin Regional Planning Commission, led the department to the conclusion that town residents are externally oriented in respect to those activities and that this was evidence of little homogeneity in the shopping

and social customs of Pleasant Prairie residents. The town responds with what we believe to be factual correctness by pointing out that, particularly within a metropolitan area, the shopping and social customs of the inhabitants can never be confined to the boundaries of a particular small area. Assuming that the town's position is factually correct, the orientation of the shopping and social customs is merely one factor which the department must take "into consideration" under sec. 66.016 (1) (a) in reaching its conclusion in respect to homogeneity and compactness. All the factors to be considered under sec. 66.016 (1) (a) must be viewed, not as positive determinants, but only as "considerations." Here, the department points to the evidence which shows a low degree of homogeneity with regard to shopping and social customs. It is an item of evidence that tends to show a lack of the necessary characteristics for incorporation. Under the statute, all of the considerations are intended to be used in arriving at the final conclusions in respect to both homogeneity and compactness. It is apparent that some of the characteristics are more relevant to one consideration than to the other.

In respect to compactness, the town makes its specific attack upon what it deems to be the criticism of the political boundaries of the proposed incorporation. The department stated in its determination:

"The common boundary with the city is quite intricate. The intricate boundary has created some problems in providing governmental services and some confusion, especially for newcomers and strangers, over which government has jurisdiction in any given area. This intricate boundary is the cumulative result of hundreds of decisions by individual property owners about where they want to live. Incorporation of Pleasant Prairie would make permanent the intricate boundary and the attendant problems."

The town attacks this statement, because, it says, boundaries between a town and a central city will always be intricate as the result of Wisconsin's annexation laws. However, in the instant case, it is clear that the ultimate finding did not reflect the intricacy of the boundary line with the city of Kenosha, to which the department earlier referred. The department specifically found, "From the standpoint of previous political boundaries, the territory may be considered reasonably compact." Moreover, in its conclusion of the considerations in respect to the factors under sec. 66.016(1)(a), the department stated, "[I]ts external boundaries are compact . . . ." Accordingly, the determination of the department clearly indicates that the external "intricate" boundary lines were not a controlling factor in a conclusion that there was a lack of compactness. The conclusion was to the contrary.

The department, after setting forth the summary of the evidence and after detailing its rationale, concluded that the territory of the proposed village was not reasonably homogeneous or compact. The ability to make the finding that the area is "reasonably homogeneous and compact" is the prerequisite to the department's approval and submission to referendum by the inhabitants of the area.

If those characteristics which are required by sec. 66.016(1)(a), Stats., are not met sufficiently to result in a finding of reasonable homogeneity and compactness, findings in respect to the requirements of sec. 66.016(1) (b) (territory beyond the core), and the public interest considerations of sec. 66.016(2) become irrelevant. The town has specifically conceded that the department's findings in respect to sec. 66.016(1)(a) are supported by substantial evidence in the record, as required by ch. 227. As we have stated in respect to our consideration of the

individual factors encompassed within sec. 66.016(1)(a) of the incorporation statute, the department has not erroneously interpreted the law or skewed its interpretation in such a manner that the department prohibits incorporations in metropolitan areas under circumstances where the legislature would have found incorporations to to be appropriate. We therefore conclude that the department properly determined that the proposed area sought to be incorporated did not satisfy sec. 66.016(1)(a); and, accordingly, the town of Pleasant Prairie may not incorporate.

As we have stated in *Scharping v. Johnson*, once there is the conclusion that there is substantial evidence to support the findings that the proposed incorporation does not meet the test of sec. 66.016(1)(a), Stats., the decision to dismiss the petition must be affirmed, and it would be contrary to the interests of judicial economy to address the other factors, set forth in the statute, to determine whether or not the director correctly made the determinations under sec. 66.016(1)(b) and (2).

We did, however, as stated at the outset of this opinion, *sua sponte* direct the parties to brief the two additional questions set forth above. Our reexamination of the referred-to cases leads to the conclusion that it is unnecessary and inappropriate to reinterpret or reexamine the holding of either of them. In respect to each of them, the issue is one encompassed under sub. (2) of sec. 66.016 and not relevant to the *ratio decidendi* of this case.

Our rereading and reconsideration of *In re Incorporation of the Village of North Milwaukee*, 93 Wis. 616, 67 N.W. 1033 (1896), leads to the conclusion that the thrust of the court's consideration then was the question of the separation of powers and the inappropriateness of the legislature requiring a circuit court to perform a legislative function. We do not see the *North Milwaukee* case as being relevant to the modern concepts of permissible delegation to administrative agencies.

The first clear acknowledgment in this state in respect to the appropriateness of the legislature's delegation to an administrative agency of a certain amount of legislative power came in *State ex rel. Wisconsin Inspection Bureau v. Whitman,* 196 Wis. 472, 220 N.W. 929 (1928).

Although the court in dicta in *North Milwaukee* appeared to indicate that, under art. IV, sec. 22, of the Wisconsin Constitution, the legislature could confer the powers of determining what is in the public interest in respect to incorporation to the county board, the reliance was upon the provision of the constitution which said that the powers were to be "of a local, legislative and administrative character." Whatever may have been the theory in 1896, it is clear from the legislative notes accompanying A.B. 226, the bill which resulted in the enactment of sec. 66.016, Stats., that the powers are not of a local character but are matters of state-wide concern. *See,* also, *Westring v. James,* 71 Wis. 2d 462 at 467–68, 238 N.W.2d 695 (1976) ; *Bleck v. Monona Village,* 34 Wis. 2d 191, 196, 148 N.W.2d 708 (1967). Hence, the application of art. IV, sec. 22, as a justification for delegation of the public interest determination for incorporations is extremely questionable.

We only refrain from a holding that the power to approve the public interest aspect of incorporation cannot be delegated to a county board because that question is not presented in this litigation. We find the *North Milwaukee* holding irrelevant to the instant case.

We conclude that, in respect to incorporation, *Westring v. James, supra* at 469, properly stated:

"The courts cannot be delegated the legislative responsibility of determining what is 'in the public interest' in respect to the creation of municipalities. This is a legislative function that may not be delegated to another branch, but, as *Schmidt* emphasized:

" 'The legislative agency or director is, in fact, an arm or agent of the legislature itself. The very existence of

the administrative agency or director is dependent upon the will of the legislature; its or his powers, duties and scope of authority are fixed and circumscribed by the legislature and subject to legislative change. An administrative agency does not stand on the same footing as a court when considering the doctrine of separation of powers.' (Pp. 56, 57) *See also: Chicago & North Western Railway Co. v. Public Service Comm.* (1969), 43 Wis. 2d 570, 169 N.W.2d 65."

Thus, we find that the *North Milwaukee* case is substantially irrelevant in respect to limitations on the delegation of legislative powers other than that it correctly holds that the recipient of that delegated power is not to be the judicial branch. *Westring,* coupled with *Schmidt v. Department of Local Affairs and Development,* 39 Wis. 2d 46, 158 N.W.2d 306 (1968), specifically rejects the argument that sec. 66.016 (2), Stats., constitutes an unconstitutional delegation of legislative power.

As stated above, neither the town nor the department initially addressed the question of whether the holdings of *North Milwaukee* or *Westring v. James* should be reevaluated. In light of our conclusion that the petition must be dismissed because of the proper finding that the characteristics of the territory do not satisfy sec. 66.016 (1) (a), Stats., our evaluation of the *North Milwaukee* case and of *Westring v. James* does not affect the decision points of this case. However, it was at our direction that the parties were asked to address those two cases; and, accordingly, it is appropriate that we comment upon them briefly, although, in light of our holding, our comments on those cases do not influence our decision.

We also address, in passing, another point which concerned the petitioners herein. The petitioners point out that, in *Scharping v. Johnson,* page 394, we said:

"Nor can the petitioner controvert the finding of the director that the incorporation was not in the public in-

terest. *In re Incorporation of Village of North Milwaukee* (1896), 93 Wis. 616, 624, 67 N.W. 1033, this court held that it was beyond the judicial power to *determine* the legislative question of whether the public interest would be promoted by the incorporation of a village." (Emphasis supplied.)

We acknowledge that the first sentence of the above quotation could be interpreted to assert that we would not review a determination of whether or not an incorporation was in the public interest. However, subsequently in *Scharping v. Johnson,* still addressing the question which troubles the petitioners in the instant case, we said:

"In accordance with that venerable principle, this court's task is confined to applying the strictures of ch. 227, Stats., to the determination of whether the administrative body properly exercised its delegated authority." P. 395.

It was our intention in *Scharping* merely to point out that this court would not determine *de novo* whether a particular incorporation was or was not in the public interest. All this court is empowered to do is to review the record to determine whether the department had appropriately considered the factors stated by the legislature to be pertinent to the public interest in sec. 66.016 (2) (a), (b), (c), and (d), Stats., and to review whether the findings made were supported by the required quantum of evidence. We clearly have the authority to review such determination, but only in the limited sense of evaluating whether the department exercised its authority to make a finding of public interest *vel non* within the authority delegated to it by the legislature. The test would be substantially one of the exercise of discretion. We, however, as a judicial branch, are foreclosed from making that determination ourselves.

In respect to this latter problem then, sec. 227.20, Stats., sets forth the scope of review of administrative

actions. There are at least three standards that could be appropriate in regard to a requested review of a sec. 66.016(2) determination of whether the proposed incorporation is in the public interest: (1) The determination to be set aside because it was based on an error of law, sec. 227.20(5); (2) the determination to be set aside as one which depends upon a finding of fact not supported by substantial evidence in the record, sec. 227.20(6); and (3) reversing or remanding the determination if the administrative agency's exercise of discretion is outside the range of discretion delegated to the agency by law. The court, however, shall not substitute its judgment for that of the agency on an issue of discretion, sec. 227.20(8).

The determination posed by sec. 66.016(2), Stats., is one of legislative discretion conferred upon the department by the legislature and which is reviewable by the courts only in the limited manner envisaged by the Administrative Procedure Act in respect to the determination of public interest under the incorporation statutes. The exercise of discretion to find public interest cannot be vested with the courts under the separation-of-powers doctrine as stated in the *North Milwaukee* case. The question is, however, reviewable by the courts under ch. 227.

Because we find that there is substantial evidence to support the department's determination that the area sought to be incorporated did not possess the necessary characteristics and because we find no error of law which infected the department's determination, we affirm the decision of the court of appeals.

*By the Court.*—Decision affirmed.